**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PATRICK BOYLAN,

                         Plaintiff,                 Case No. 21-cv-2041 (PGG)

           -against-

SOGOU INC.,

                     Defendant.

**DEFENDANT'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**GOULSTON & STORRS PC**

Nicholas Cutaia
Isabel P. Sukholitsky
Charles R. Jacob III
885 Third Avenue – 18th Floor
New York, New York 10022

-and-

Richard J. Rosensweig (admitted *pro hac vice*)
400 Atlantic Avenue
Boston, Massachusetts 02110-3333

*Attorneys for Defendant Sogou Inc.*

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 3

      A.     Description of the Proposed Merger ............................................................ 3

      B.     The Schedule 13E-3/A-1 ............................................................................. 5

      C.     The January 2021 Changyou Decision ....................................................... 6

      D.     Sogou's Intention to Amend the Schedule 13E-3/A-1 ............................... 7

ARGUMENT .................................................................................................................. 8

    I.    AS A THRESHOLD MATTER, THE COURT LACKS SUBJECT MATTER
       JURISDICTION ................................................................................................ 8

      A.     There Is No Case or Controversy Ripe for Adjudication before the Court  8

           1.     Plaintiff Fails the First Prong of the Ripeness Test Because his
                   Claim Depends on Further Factual Developments ......................... 9

           2.     Plaintiff Also Fails the Second Prong of the Ripeness Test Because
                   he Raises Only Speculative Future Injury to Others.................... 10

      B.     Plaintiff Lacks Standing to Enjoin the Proposed Merger ......................... 12

           1.     Plaintiff Cannot Demonstrate an Injury Sufficient for
                   Constitutional Standing................................................................. 12

           2.     Plaintiff Cannot Demonstrate Prudential Standing to Assert Claims
                   on Behalf of Others...................................................................... 14

   II.   PLAINTIFF HAS FAILED TO SATISFY THE CRITERIA FOR A PRELIMINARY
       INJUNCTION ................................................................................................. 15

      A.     Plaintiff Cannot Show Irreparable Harm Because Money Damages Are
           Available .................................................................................................. 15

      B.     Plaintiff Has Not Shown a Likelihood of Success on the Merits or a
           Serious Question Going to the Merits with a Balance of Hardships
           "Tipping Decidedly" in his Favor............................................................ 17

           1.     Plaintiff Has not Shown a Likelihood of Success on the Merits .. 17

           2.     Plaintiff's Claims Cannot Succeed Because Section 13(e) Does not
                   Provide a Private Right of Action for Injunctive or any Other
                   Relief............................................................................................ 18

           3.     Plaintiff Has not Shown a Serious Question Going to the Merits
                     with a Balance of Hardships "Tipping Decidedly" in Plaintiff's
                   Favor ........................................................................................... 19

      C.     Plaintiff Appears Unwilling or Unable to Post a Bond as Required by Rule
           65(c) ........................................................................................................ 22

      D.     The Public Interest Weighs in Favor of Denying an Injunction ............... 22

i

CONCLUSION.................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967).................................................................................................. 9

*Alpha Capital Anstalt v. Shiftpixy, Inc.*,
  432 F. Supp. 3d 326 (S.D.N.Y. 2020) ...................................................................... 16

*AMSAT Cable Ltd. v. Cablevision of Conn. Ltd. P'ship*,
  6 F.3d 867 (2d Cir. 1993) ......................................................................................... 10

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979)..................................................................................................... 9

*Berg v. First Am. Bankshares, Inc.*,
  Civ. A. No. 83-3887, 1985 WL 2232 (D.D.C. Apr. 17, 1985) ................................. 18

*Bolton v. Gramlich*,
  540 F. Supp. 822 (S.D.N.Y. 1982) ........................................................................... 18

*Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*,
  638 F.2d 568 (2d Cir. 1981) ..................................................................................... 20

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
  364 F. Supp. 3d 253 (S.D.N.Y. 2019) ...................................................................... 20

*Corning Inc. v. PicVue Elecs., Ltd.*,
  365 F.3d 156 (2d Cir. 2004) ..................................................................................... 22

*Cort v. Ash*,
  422 U.S. 66 (1975).................................................................................................... 19

*DiRienzo v. Philip Servs. Corp.*,
  294 F.3d 21 (2d Cir. 2002) ....................................................................................... 24

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006).................................................................................................. 24

*EMA Fin., LLC v. Vystar Corp.*,
  19-cv-01545 (ALC), 2020 WL 1233608 (S.D.N.Y. Mar. 13, 2020) ........................ 16

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
  559 F.3d 110 (2d Cir. 2009) ............................................................................... 15, 17

*Fasano v. Juoqing Li*,
  16-cv-8759 (KPF), 2017 WL 6764692 (S.D.N.Y. Dec. 29, 2017)........................... 18

*Flores v. Islip*,
  382 F. Supp. 3d 197 (E.D.N.Y. 2019) ...................................................................... 25

*Gennaro v. Rosenfield*,
  600 F. Supp. 485 (S.D.N.Y. 1984) ........................................................................... 20

*Howing Co. v. Nationwide Corp.*,
  826 F.2d 1470 (6th Cir. 1987) ........................................................................ 19

*In re Facebook, Inc., IPO Securities and Derivative Litigation*,
  13-cv-2830 (RWS), 2013 WL 6798160 (S.D.N.Y. Dec. 23, 2013) ........................................ 9

*In re Weight Watchers Int'l Inc. Securities Litigation*,
  19-cv-2005 (WHP), 2020 WL 7029134 (S.D.N.Y. Nov. 30, 2020).......................................... 3

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*,
  596 F.2d 70 (2d Cir. 1979) ........................................................................ 20

*John Labatt Ltd. v. Onex Corp.*,
  890 F. Supp. 235 (S.D.N.Y. 1995) .................................................................. 23

*Juicy Couture, Inc. v. Bella Intern. Ltd.*,
  930 F. Supp. 2d 489 (S.D.N.Y. 2013) ............................................................... 25

*Kalmanovitz v. G. Heileman Brewing Co.*,
  595 F. Supp. 1385 (D. Del. 1984), *aff'd*, 769 F.2d 152 (3rd Cir. 1985) ................................ 18

*Katz v. Donna Karan Int'l, Inc.*,
  14-cv-740 (PAC), 2017 WL 2191605 (S.D.N.Y. May 17, 2017) .......................................... 14

*Kingdom 5-KR-41 Ltd. v. Star Cruises PLC*,
  01-cv-2946 (AGS), 2002 WL 432390 (S.D.N.Y. Mar. 20, 2002)......................................... 24

*Kramer v. Time Warner, Inc.*,
  937 F.2d 767 (2d Cir. 1991) ........................................................................ 3

*Levin v. Am. Document Sers., LLC*,
  828 F. App'x 788 (2d Cir. 2020) .................................................................... 12

*Lexmark Int'l v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)................................................................................ 15

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*,
  75 F.Supp.3d 592 (S.D.N.Y. 2014) ................................................................. 15

*Metro. Taxicab Bd. of Trade v. N.Y.C*,
  615 F.3d 152 (2d Cir. 2010) ........................................................... 8, 15, 17, 19

*Morrison v. Nat'l Austl. Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008) ........................................................................ 8

*Motor Vehicles Mfrs. Ass'n of U.S. v. DEC*,
  79 F.3d 1298 (2d Cir. 1996) ........................................................................ 9

*N.Y. Civ. Liberties Union v. Grandeau*,
  528 F.3d 122 (2d Cir. 2008) ..................................................................... 9, 11

*N.Y. v. U.S. D.H.S.*,
  969 F.3d 42 (2d Cir. 2020) ........................................................................ 13

*N.Y.S. Ass'n of Career Sch. v. State Ed. Dept. of N.Y.*,
  749 F. Supp. 1264 (S.D.N.Y. 1990) ................................................................. 20

*NewLead Holdings Ltd. v. Ironridge Glob. IV Ltd.*,
   14-cv-3945 (WHP), 2014 WL 2619588 (S.D.N.Y. June 11, 2014) ........................................ 16

*Nutritional Health All. v. Shalala*,
   144 F.3d 220 (2d Cir. 1998) .......................................................................................................... 9

*Ohio Forestry Ass'n v. Sierra Club*,
   523 U.S. 726 (1998) ...................................................................................................................... 9

*Powers v. Ohio*,
   499 U.S. 400 (1991) .................................................................................................................... 15

*ProFitness Phys. Therapy Ctr. v. Pro-Fit Ortho. And Sports Phys. Therapy P.C.*,
   314 F.3d 62 (2d Cir. 2002) ........................................................................................................ 25

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010) ........................................................................................................ 24

*Sanders v. Thrall Car Manuf. Co.*,
   582 F. Supp. 945 (S.D.N.Y. 1983) ............................................................................................ 18

*Shamrock Assocs. v. Horizon Corp.*,
   632 F. Supp. 566 (S.D.N.Y. 1986) ............................................................................................ 19

*Sheinberg v. Fluor Corp.*,
   514 F. Supp. 133 (S.D.N.Y. 1981) ............................................................................................ 23

*Silsby v. Icahn*,
   17 F. Supp. 3d 348 (S.D.N.Y. 2014) ........................................................................................... 3

*Spanski Enters., Inc. v. Telewizja Polska S.A.*,
   832 F. App'x 723 (2d Cir. 2020) ................................................................................................. 8

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*,
   190 F. Supp. 2d 577 (S.D.N.Y. 2002) ...................................................................................... 16

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................................................................... 12

*Sunni LLC v. Edible Arrangements, Inc.*,
   14-cv-461 (KPF), 2014 WL 1226210 (S.D.N.Y. Mar. 25, 2014).............................................. 13

*Tasini v. N.Y. Times Co Inc.*,
   184 F. Supp. 2d 350 (S.D.N.Y. 2002) ...................................................................................... 15

*Thomas v. N.Y.C.*,
   143 F.3d 31 (2d Cir. 1998) .......................................................................................................... 9

*Thompson v. Thompson*,
   484 U.S. 174 (1988) .................................................................................................................... 19

*Touche Ross & Co. v. Redington*,
   442 U.S. 560 (1979) .................................................................................................................... 19

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
   444 U.S. 11 (1979)...................................................................................................................... 19

*U.S. v. Bond,*
   762 F.3d 255 (2d Cir. 2014) ............................................................................................ 8

*Villeneuve v. Conn.,*
   472 F. App'x 84 (2d Cir. 2012) ...................................................................................... 11

**Rules**

17 C.F.R. § 240.13e-3 ................................................................................................. 2, 4, 5, 17

Fed. R. Civ. P. 65(c) ............................................................................................................ 22

Defendant Sogou Inc. ("Sogou") respectfully submits this Memorandum of Law in opposition to the March 9, 2021 motion of Plaintiff Patrick Boylan ("Plaintiff" or "Boylan") for a preliminary injunction ("PI Motion").

## INTRODUCTION

This action involves an attempt by Boylan to enjoin a proposed short-form going-private merger (the "Proposed Merger") outside the United States ("U.S.") between two Cayman Islands companies:  Sogou and Titan Supernova Limited ("Parent"), an indirect wholly-owned subsidiary of Sogou's largest beneficial shareholder, Tencent Holdings Limited ("Tencent"), a Cayman Islands company.  Boylan seeks this extraordinary remedy based on his allegation that Sogou misled holders of American depository shares ("ADS") representing Sogou Class A Ordinary Shares by filing a *non-final,* first amended Schedule 13E-3 Transaction Statement (the "Schedule 13E-3/A-1) with the U.S. Securities and Exchange Commission (the "SEC") on December 1, 2020.[1]  According to Boylan, even though the Schedule 13E-3/A-1 will not be sent to any ADS holders, it must be amended now because it is false and misleading for not disclosing a Cayman Islands trial court decision of first impression (the "Changyou Decision") concerning dissenting shareholder rights issued *after* the Schedule 13E-3/A-1 was submitted to the SEC.  The Changyou Decision is currently on appeal and does not conclusively establish Cayman Islands law concerning rights of dissenting shareholders.  Further, the Schedule 13E-3/A-1 has not been finalized.[2]  If the Proposed Merger goes forward, the Schedule 13E-3/A-1 will be *amended* before it is sent to any ADS holder.

---

[1] Capitalized terms not otherwise defined herein are used with the same meanings as in the Schedule 13E-3/A-1, Exhibit C to the Declaration of Christopher J. Kupka ("Kupka Decl."), ECF No. 6-3.

[2] The Schedule 13E-3/A-1 was filed by Sogou, Tencent, Parent, THL A21 Limited ("THL"), Tencent Mobility Limited, Sohu.com Limited, and Sohu.com (Search) Limited (the "Filing Persons").

1

Under these circumstances, Boylan's motion for a preliminary injunction to enjoin the Proposed Merger fails for two main reasons:

<u>First</u>, this Court lacks subject matter jurisdiction both because there is no case or controversy ripe for adjudication and because Boylan lacks standing. With respect to ripeness, the Proposed Merger is not "imminent" as Boylan asserts.[3] Key conditions for the Proposed Merger have not been met. As set forth above, the Schedule 13E-3/A-1 is subject to amendment and Sogou has no plans to distribute any Schedule 13E-3 to ADS holders unless and until these conditions are satisfied. At this stage, Sogou does not know if the Proposed Merger will go forward, in which case no Schedule 13E-3 will ever be sent to ADS holders. If the Proposed Merger does proceed, Sogou intends to file an amended Schedule 13E-3 to account for any material developments, including the Changyou Decision. Such amendments are specifically contemplated by 17 C.F.R. § 240.13e-3(d). The Proposed Merger is a process in mid-stream that Boylan seeks to disrupt with this lawsuit. *See infra*, Point I.A.

With respect to standing, although Boylan purportedly seeks a remedy to benefit other Sogou ADS holders (not himself), this is not a class action. Boylan filed this action solely in his name though he suffered no harm. Boylan himself is at no risk of being deceived because he obviously is fully aware of the Changyou Decision. *See infra*, Point I.B.

<u>Second</u>, the PI Motion should be denied because Boylan does not satisfy the well-settled criteria for a preliminary injunction, namely, that he will suffer irreparable harm, there is a likelihood of success or a balance of the hardships in Boylan's favor, and the public's interest weighs in favor of enjoining the Proposed Merger. Even if this Court were to accept that Boylan has suffered harm (he has not), Boylan has not established irreparable harm, since his purported

---

[3] *See* Opening Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction ("Pl. Memo.") at 1.

"injury" would easily be compensable by money damages.  Nor has Boylan demonstrated a likelihood of success on the merits or a balance of the hardships in his favor because he has not been misled or harmed by the non-final Schedule 13E-3/A-1 and no private right of action under Section 13(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq (the "Exchange Act") exists.  *See infra*, Point II.B.  Finally, given that the Proposed Merger is not currently going forward and the Schedule 13E-3/A-1 will be amended before being sent to any ADS holders, the injunction Boylan seeks is not in the public interest.  *See infra*, Point II.D.

## FACTUAL BACKGROUND

### A.    Description of the Proposed Merger

On July 27, 2020, Sogou and Sohu.com Limited issued press releases (later followed by the submission of Form 6-Ks to the SEC) regarding the Sogou Board of Directors' receipt of a proposal for Tencent and its affiliates to acquire all of the outstanding Sogou Class A Ordinary Shares, including Class A Ordinary Shares represented by ADSs, and Class B Ordinary Shares not already beneficially owned by Tencent in a statutory merger for $9.00 per ADS or Ordinary Share.  *See* Kupka Decl., Ex. C (Schedule 13E-3/A-1) at 30.  The purchase price proposed by Tencent represented a premium of approximately 56.5% to the closing trading price of the ADSs on July 24, 2020, the last trading day preceding the proposal, and a premium of 84.9% to the volume-weighted average price of the ADSs during the 30 trading days preceding the proposal.[4] *See* Declaration of Isabel P. Sukholitsky in Support of Opposition to Plaintiff's Motion for Preliminary Injunction ("Sukholitsky Decl."), ¶ 3, Ex. 1 at 6.  On September 29, 2020, Sogou

---

[4] It is well-settled that the Court may take judicial notice of Sogou's filings and communications with the SEC, some of which are submitted by Boylan himself.  *See, e.g., In re Weight Watchers Int'l Inc. Securities Litigation*, 19-cv-2005 (WHP), 2020 WL 7029134 at **7-8 (S.D.N.Y. Nov. 30, 2020), quoting *Silsby v. Icahn*, 17 F. Supp. 3d 348, 354 (S.D.N.Y. 2014), and *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (the Court  may "take judicial notice of public disclosure documents that must be filed with the Securities and Exchange Commission ('SEC') and documents that both 'bear on the adequacy' of SEC disclosures and are 'public disclosure documents required by law.'").

announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with the Parent and other direct or indirect subsidiaries of Tencent.  *See* Kupka Decl. at 4; 34 (on September 29, 2020 Sogou issued a press release and furnished a Form 6-K to the SEC announcing its having entered into the Merger Agreement).  On October 28, 2020, the Filing Persons filed a transaction statement with the SEC pursuant to Section 13(e) of the Exchange Act and Rule 13e-3 promulgated thereunder.  *See id.* at 1.

On December 1, 2020, the Merger Agreement was amended to extend the termination date on or before which the closing conditions of the Proposed Merger must occur from March 29, 2021 to July 31, 2021.  *Id.* at 34; *see also* Declaration of Fion Zhou In Support of Opposition to Motion for Preliminary Injunction ("Zhou Decl."), ¶ 2.  The amendment was made to account for the time needed for clearance of an anti-monopoly filing made in the Peoples Republic of China ("PRC") in connection with the Proposed Merger.  *See* Kupka Decl., Ex. C at 34.  The Schedule13E-3/A-1 was filed with the SEC on December 1, 2020 to reflect that change.  In a letter dated December 10, 2020, the Office of Mergers and Acquisitions of the SEC's Division of Corporation Finance (the "SEC Staff") provided one additional comment regarding the Schedule 13E-3/A-1.  Sukholitsky Decl., ¶ 4, Ex. 2.  On January 6, 2021, the Filing Persons informed the SEC Staff of their plan to include supplemental information in response to the SEC Staff comment in a future amendment of the Schedule 13E-3/A-1.  *See id.*, ¶ 5, Ex. 3.

The Proposed Merger is contemplated to occur in accordance with Section 233(7) of the Cayman Islands Companies Law through a statutory short-form merger.  *See* Kupka Decl., Ex. C at 4-5.  The Proposed Merger may not occur, however, until the closing conditions outlined in the Proposed Merger have been satisfied or waived.  *Id.* at 5.  Moreover, the Proposed Merger

may not occur until at least 20 days after the date of mailing of a further amended Schedule 13E-3 or a later date as may be required to comply with Rule 13e-3 and all other applicable laws.  *Id*.

The parties' obligations to complete the Proposed Merger are subject to the satisfaction or waiver of numerous conditions detailed at Kupka Decl., Ex. C at 15-16, including "all regulatory filings, permits, authorizations, consents and approvals that are required by applicable PRC laws to be made or obtained (the 'PRC Regulatory Filings or Approvals') having been duly made or obtained, or the statutory clearance or non-objection period in respect of any such regulatory filing or notification having expired and no objection having been raised, in each case in accordance with applicable PRC laws, and no Non-Required Remedy has been imposed[.]"  *Id*. at 16; *see also id.* at 27 ("In order for the Merger to be completed, the closing conditions under the Merger Agreement, including the passage of not less than 20 days after this Transaction Statement is first mailed to the shareholders of the Company and the making and obtaining of the PRC regulatory Filings or Approvals in accordance with applicable PRC law, must be satisfied or waived.").  Required approvals include clearance by the State Administration for Market Regulation of the PRC under the PRC Anti-Monopoly Law of Tencent's acquisition of beneficial ownership of all of the Ordinary Shares of Sogou held by Sohu.com (Search) Limited (the "Tencent/Sohu Share Acquisition"), which is a contractual condition for the completion of the Proposed Merger.  *See* Zhou Decl., ¶ 5.  To date this approval has not been obtained.[5]  *Id*.

**B.**     <u>**The Schedule 13E-3/A-1**</u>

Under section 233(7) of the Cayman Islands Companies Law, the Proposed Merger does not require a vote of shareholders to approve the transaction if a copy of the Plan of Merger is

---

[5] THL and Parent made an anti-monopoly filing with the relevant PRC regulatory authorities in connection with the Merger in late November 2020.  *See* Kupka Decl., Ex. C at 34; Zhou Decl., ¶ 5.

given to every registered shareholder of each constituent company.  *See* Kupka Decl., Ex. C at 21; Compl., ¶ 26.  The Schedule 13E-3/A1 states that "[r]egistered holders of Class A Ordinary Shares (including holders of Class A Ordinary Shares represented by ADSs) will not be able to follow the statutory procedure to exercise dissenters' rights under section 238 of the Cayman Islands Companies Law, which would otherwise apply if the Merger were a 'long-form' merger under section 233(6) of the Cayman Islands Companies Law."  Kupka Decl., Ex. C at 21.  That statement was correct based on Cayman Islands law at the time the Schedule 13E-3/A-1 was submitted to the SEC in December 2020.[6]

## C.    **The January 2021 Changyou Decision**

On January 28, 2021, over eight weeks *after* the Schedule 13E-3/A-1 was submitted to the SEC, a trial court in the Cayman Islands issued the Changyou Decision.  The Cayman Islands court concluded that subsection 238(1) of the Cayman Islands Companies Law, which confers a right on shareholders dissenting from a merger, is ambiguous when considered in the context of short-form mergers under subsection 233(7).  *See* Kupka Decl., Ex. A at 69.  The court further concluded that subsection 238(1) should be construed so as to allow for dissenters' rights in short-form mergers.  *See id.* at 69-70.

Section 238 of the Cayman Islands Companies Law provides that for a shareholder to exercise dissenters' rights, the shareholder "shall give the constituent company, before the vote on the merger or consolidation, written objection to the action" and that the objection must include a demand for payment "if the merger or consolidation is authorised by the vote."  C.I. Companies Law, s. 238. Rights of Dissenters, s. 238(2) and (3) (2020).  Because no vote is

---

[6] The Cayman Islands law firm of Conyers Dill & Pearman advised Sogou's Special Committee on legal matters with respect to Cayman Islands law.  *See* Kupka Decl., Ex. C at 33.

required for a short-form merger under Cayman Islands law, Changyou had asserted that,

consistent with Cayman Islands law as it was then understood, the Companies Law does not

provide for dissenters' rights in the absence of a statutory mechanism to exercise them.[7]  *See*

Kupka Decl., Ex. A at 9-11.  The Cayman Islands trial court disagreed.  *See id.* at 44.

 The Changyou Decision has been appealed to the Cayman Islands Court of Appeal.

Sukholitsky Decl., ¶ 6, Ex. 4.  The Court of Appeal decision may be further appealed to the

Judicial Committee of the Privy Council of the United Kingdom, which is the court of final

appeal for United Kingdom overseas territories and Crown dependencies, like the Cayman

Islands.  *See* https://www.jcpc.uk/ (last visited April 7, 2021);

https://www.judicial.ky/courts/judicial-committee-of-the-privy-council (last visited April 7,

2021).

**D.** **Sogou's Intention to Amend the Schedule 13E-3/A-1**

 If and when the Proposed Merger proceeds, Sogou will amend the Schedule 13E-3/A-1 to

include disclosure concerning anti-monopoly pre-clearance, the Changyou Decision, the appeal

of the Changyou Decision to the Court of Appeal of the Cayman Islands, and the unrelated

additional language requested by the SEC Staff.  Zhou Decl., ¶¶ 3, 6.  At this stage, however,

Sogou does not know if the Proposed Merger will proceed or whether other amendments will be

needed to the Schedule 13E-3/A-1 (*Id.*, ¶ 7); and Sogou is unable to determine if or when a

further amended Schedule 13E-3 will be sent to ADS holders, if ever.  *Id.*, ¶ 7.

---

[7] Other subsections of Section 238 also require various actions by the company and the shareholders to occur within certain time frames before or after a shareholders' vote in order to exercise dissenters' rights.  *See* Kupka Decl., Ex. A at 16-20 (subsections 238(4), (5), and (9)).

## ARGUMENT

It is well-settled that, "to justify a preliminary injunction, a movant must demonstrate 1) irreparable harm absent injunctive relief; 2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor,' […] and 3) that the public's interest weighs in favor of granting an injunction." *Metro. Taxicab Bd. of Trade v. N.Y.C*, 615 F.3d 152, 156 (2d Cir. 2010) (internal citations omitted); *accord Spanski Enters., Inc. v. Telewizja Polska S.A.*, 832 F. App'x 723, 724 (2d Cir. 2020) (summary order affirming denial of preliminary injunction (quoting *Metro. Taxicab Bd. of Trade, supra*)).  Boylan fails on all three criteria.  Moreover, as a threshold matter his Complaint and PI Motion should not even be before this Court because there is no ripe case or controversy and Boylan lacks standing to assert the claims in the Complaint.

## I.  AS A THRESHOLD MATTER, THE COURT LACKS SUBJECT MATTER JURISDICTION

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12 (b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *U.S. v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (quotation marks omitted)).

### A.  There Is No Case or Controversy Ripe for Adjudication before the Court

Boylan's claim is not ripe for adjudication because it raises prematurely a purported issue predicated on future events that may never occur, and will likely resolve itself without the need for judicial intervention.  As a "constitutional prerequisite" to exercising jurisdiction, a federal court must determine if a claim is ripe.  *In re Facebook, Inc., IPO Securities and Derivative*

*Litigation*, 13-cv-2830 (RWS), 2013 WL 6798160 at *22 (S.D.N.Y. Dec. 23, 2013) (citing *Nutritional Health All. v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998)). To be ripe for adjudication, there must be "a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Id*. (quoting *Motor Vehicles Mfrs. Ass'n of U.S. v. DEC*, 79 F.3d 1298, 1305 (2d Cir. 1996) (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)) (other citations and internal quotations omitted)). Therefore, "when resolution of an issue turns on whether there are nebulous future events so contingent in nature that there is no certainty they will ever occur, the case is not ripe for adjudication." *Id.* (citing *Thomas v. N.Y.C.*, 143 F.3d 31, 34 (2d Cir. 1998)).

The ripeness doctrine "depends upon two factors: [1] the fitness of the issues for adjudication and [2] the hardship to the parties that would result from withholding review." *Motor Vehicles Mfrs. Ass'n of U.S.* at 1305 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). "A claim is fit for review[,]" satisfying the first factor, "when it requires no further factual development to crystallize the legal issues and aid the court in resolving them." *Facebook* at 22 (citing *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 737 (1998)). To satisfy the second factor, the claim must "'create[] a direct and immediate dilemma for the parties …' outside the 'mere possibility of future injury' without the prospect of causing 'present detriment.'" *Id*. (quoting *N.Y. Civ. Liberties Union v. Grandeau*, 528 F.3d 122, 131 (2d Cir. 2008)). Boylan's claim here satisfies neither of these requirements.

1.   **Plaintiff Fails the First Prong of the Ripeness Test Because his Claim Depends on Further Factual Developments**

Several events must occur before the Proposed Merger proceeds, much less closes. If these events do not occur and the Proposed Merger does not proceed, neither Plaintiff nor any other ADS holder could be injured in the manner alleged. Two important developments that

have yet to occur are (1) Sogou filing at least one additional amended Schedule 13E-3 with the SEC and (2) subsequently sending it to ADS holders.  The Proposed Merger cannot close until at least 20 days after Sogou distributes this amended Schedule 13E-3.  As noted above, Sogou will amend the current Schedule 13E-3/A-1 before proceeding with the Proposed Merger.  *See* Zhou Decl., ¶¶ 3, 6.

An additional amended Schedule 13E-3 has not yet been prepared because the Filing Parties await anti-monopoly approval in the PRC as a precondition to the Proposed Merger, which must be satisfied or waived prior to closing.  *See* Zhou Decl., ¶ 5.  Further, Sogou has not yet amended the Schedule 13E-3/A-1 to incorporate an additional comment from the SEC Staff.  *See* Zhou Decl., ¶ 6.  Boylan filed his Complaint and this PI Motion before these amendments could be incorporated into a second amended Schedule 13E-3.

The state of Cayman Island law as to dissenters' rights in short-form mergers is equally in flux.  Boylan asserts that Cayman Islands law provides for dissenters' rights in short-form mergers based on the Changyou Decision.  Compl. ¶ 28.  However, the Changyou Decision is currently on appeal (*see* Sukholitsky Decl, ¶ 6, Ex. 4) and thus any number of developments could occur between now and when the Proposed Merger is currently expected to close (by the end of July 2021) which may moot Plaintiff's purported claims.  *See generally*, *AMSAT Cable Ltd. v. Cablevision of Conn. Ltd. P'ship*, 6 F.3d 867, 873 (2d Cir. 1993) (claim not ripe for review where "adjudication can await a more concrete presentation of the dispute.").  Therefore, Boylan fails the first prong of the ripeness test.

### 2.  <u>Plaintiff Also Fails the Second Prong of the Ripeness Test Because he Raises Only Speculative Future Injury to Others</u>

The PI Motion must be denied because it also fails the second prong of the ripeness test, requiring a showing of hardship to the plaintiff in withholding court consideration of the claim.

Boylan's claim raises no injury to himself.  He is well aware of the Changyou Decision and is on notice to seek advice of counsel as to his rights as a dissenter, if any, in the event the Proposed Merger proceeds.[8]

The only injury alleged is the mere possibility of future injury to others without any prospect of present harm.  But while Boylan purports to seek relief for *other* ADS holders who may be unaware of the Changyou Decision, he has not brought a class action.  *See* Compl., ¶ 6. Even had he done so, class claims would be premature as well.  If the Proposed Merger proceeds, the Schedule 13E-3/A-1 will be amended to reflect the Changyou Decision and the status of appeal, as well as other developments that have yet to materialize.  *See* Zhou Decl., ¶¶ 3-4, 6. Thus, ADS holders will receive updated information about the Changyou Decision if and when an amended Schedule 13E-3 is distributed to ADS holders.

Until then, even if Boylan had standing to sue on behalf of absent ADS holders, any harm alleged to those non-parties is speculative and withholding judicial review puts them in no different a position than they would be if Boylan were to wait for Sogou to send notices to ADS holders prior to the Proposed Merger's completion date.  Thus, even if Boylan had standing to sue for absent ADS holders, the PI Motion would still fail the second prong of the ripeness test and must be denied.  *See generally*, *Villeneuve v. Conn.*, 472 F. App'x 84, 86 (2d Cir. 2012) (claim was not ripe for review; "unclear what, if any hardship Villeneuve will suffer if we decline consideration of his constitutional challenge"); *N.Y. Civ. Liberties Union v. Grandeau*, 528 F.3d 122, 135 (2d Cir. 2008) ("…because the NYCLU has not demonstrated that withholding judicial review will subject it to hardship, [… its] claim is not ripe for adjudication.").

---

[8] The Schedule 13E-3/A-1 urges ADS holders to "seek their own advice on Part XVI of the Cayman Islands Companies Law from a licensed Cayman Islands law firm." *See, e.g.* Kupka Decl., Ex. C at 63.

**B.**     **Plaintiff Lacks Standing to Enjoin the Proposed Merger**

Boylan is required to establish both constitutional and prudential standing to proceed.

*Levin v. Am. Document Servs., LLC*, 828 F. App'x 788, 791 (2d Cir. 2020).  Constitutional

standing requires Boylan to show that (1) he has suffered an injury in fact – "'an invasion of a

legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical[;]' (2) a causal connection between the injury and the conduct he

complains of; and (3) that 'it [is] likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision.'"  *Id*. (internal citations omitted).  For prudential standing a

plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the

legal rights or interests of third parties."  *Id*. (internal citations omitted).  Here, Boylan cannot

establish either constitutional standing or prudential standing.

**1.**     **Plaintiff Cannot Demonstrate an Injury Sufficient for Constitutional
          Standing**

To establish an injury in fact, a plaintiff must show that he has suffered "an invasion of a

legally protected interest" that is "concrete and particularized" and "actual or imminent, not

conjectural or hypothetical."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).  "For an

injury to be 'particularized,' it must affect the plaintiff in a personal and individual way."  *Id*.

Further, particularization alone is not sufficient to establish standing.  *Id.*  The injury must also

be concrete and an injury is concrete where it is "real" and not "abstract."  *Id*.  For example, a

plaintiff cannot allege "a bare procedural violation, divorced from any concrete harm, and satisfy

the injury-in-fact requirement of Article III."  *Id*. at 1549.  Here, Boylan has not demonstrated an

injury in fact because Boylan fails to allege any injury personal to him, let alone an imminent

and concrete injury.

Rather than a personal injury, Boylan alleges that he "brings this action to ensure that [other] shareholders are [....] apprised of their right, if they so elect, to seek a judicial determination of the fair value of Sogou American Depositary [sic] Shares." Compl., ¶ 7. In making this allegation, Boylan concedes that he has suffered no injury personally because he is aware of the Changyou Decision, which he seeks to have disclosed. *See* Compl., ¶ 28. Thus, Boylan is not at any risk of misinformation regarding dissenter's rights in the Cayman Islands. A generalized statement that he is threatened with irreparable harm does not change that outcome. Compl., ¶ 39; *see also* Point II *infra*; *see also Sunni LLC v. Edible Arrangements, Inc.*, 14-cv-461 (KPF), 2014 WL 1226210, at *11 (S.D.N.Y. Mar. 25, 2014) (generalized statements of harm are not sufficient on a motion for preliminary injunction).

Boylan also lacks standing to seek a preliminary injunction because he has not submitted evidence to support his PI Motion. As the Second Circuit has stated, "[a]t the preliminary injunction stage, 'a plaintiff's burden to demonstrate standing will normally be no less than that required on a motion for summary judgment. Accordingly, to establish standing for a preliminary injunction, a plaintiff cannot rest on ... mere allegations ... but must set forth by affidavit or other evidence specific facts' that establish the 'three familiar elements of standing: injury in fact, causation, and redressability.'" *N.Y. v. U.S. D.H.S.*, 969 F.3d 42, 59 (2d Cir. 2020) (internal citations omitted). Boylan fails to meet this standard. He has not even offered proof that he holds Sogou ADSs, much less ADSs acquired before the Changyou Decision. This is an independent and sufficient basis to deny the PI Motion.

Even if Boylan had submitted evidence to support his standing, he fails to establish that an injury is imminent. Boylan ignores that no Schedule 13E-3 has been distributed to Sogou shareholders, that an amendment to the Merger Agreement pushed the date by which the

transaction must close from March 29, 2021 to July 31, 2021 and that the Schedule 13E-3/A-1

states that the Proposed Merger is expected to close by the second half of 2021 (whereas the

Schedule 13E-3 as originally filed with the SEC stated that the Proposed Merger was expected to

be completed in the fourth quarter of 2020) – a clear indication that the Proposed Merger needs

more time to proceed.  Despite this, Plaintiff baselessly argues that the Proposed Merger could

proceed "at any time."  Pl. Memo. at 6.  Plaintiff's argument is undermined by the very filing on

which it relies.  In addition to the requisite 20-day waiting period following distribution of an

amended 13E-3 to ADS holders before the Proposed Merger may be completed, anti-monopoly

hurdles in the PRC remain, both of which prevent this Proposed Merger from being imminent.

*See* Zhou Decl., ¶ 7.  In fact, it is unclear whether the Proposed Merger will proceed at all.  *See*

*id.,* ¶ 4.  Under the circumstances, Plaintiff cannot credibly argue that there is any imminent

harm.  *See Katz v. Donna Karan Int'l, Inc.*, 14 cv-740 (PAC), 2017 WL 2191605, at *5

(S.D.N.Y. May 17, 2017) (dismissing action for lack of standing because plaintiff did not

demonstrate, among other things, risk of imminent harm).[9]

### 2. Plaintiff Cannot Demonstrate Prudential Standing to Assert Claims on Behalf of Others

Prudential standing encompasses "the general prohibition on a litigant's raising another

person's legal rights, the rule barring adjudication of generalized grievances more appropriately

addressed in the representative branches, and the requirement that a plaintiff's complaint fall

within the zone of interests protected by the law invoked."  *Lexmark Int'l v. Static Control*

---

[9] The allegation that others are "threatened with irreparable harm in the absence of a corrective disclosure" (Compl., ¶ 39) is nothing more than an "abstract," hypothetical injury that could occur only if (i) all the conditions to the Proposed Merger, including PRC anti-monopoly approval, occur and the Proposed Merger moves forward, (ii) upon the Proposed Merger moving forward, Sogou fails to amend the Schedule 13E-3/A-1, and (iii) instead, Sogou distributes the Schedule 13E-3/A-1 to shareholders.  This unlikely sequence of events highlights the theoretical nature of the injury alleged.

*Components, Inc.*, 572 U.S. 118, 126 (2014) (internal citations omitted).  Even if Boylan sought to redress an injury personal to him, his allegation that he brings his claim to ensure *other* shareholders are afforded vital information regarding dissenter's rights in the Cayman Islands (Compl., ¶¶ 6, 38) violates this well-settled principle.

Prudential standing requires that in addition to establishing constitutional standing, a plaintiff must satisfy prudential limitations on third-party standing that include: "[1] a close relation to the third party, and [2] there must exist some hindrance to the third party's ability to protect his or her own interests."  *Powers v. Ohio*, 499 U.S. 400, 411 (1991); *Tasini v. N.Y. Times Co Inc.*, 184 F. Supp. 2d 350, 357 (S.D.N.Y. 2002).  Boylan seeks to protect other shareholders but makes no allegation regarding his relation to those shareholders or why they are unable to protect their own rights.  *Tasini* at 357 (S.D.N.Y. 2002).  Accordingly, Plaintiff also fails to establish prudential standing.

## II.    PLAINTIFF HAS FAILED TO SATISFY THE CRITERIA FOR A PRELIMINARY INJUNCTION

### A.    Plaintiff Cannot Show Irreparable Harm Because Money Damages Are Available

As noted above, the first element required to obtain preliminary injunctive relief is "irreparable harm absent injunctive relief."  *Metro. Taxicab Bd. of Trade, supra* at 156.  It is well-settled that "when an injury is compensable through money damages there is no irreparable harm."  *Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d 592 (S.D.N.Y. 2014) (internal citations omitted).  Courts depart from this rule in rare instances such as where insolvency concerns exist (of which there are none).  *Id.*  Indeed, "[a] showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal citations omitted).

Boylan's own Memorandum of Law in support of his PI Motion describes his claim in words that demonstrate the lack of irreparable harm: "In the absence of a preliminary injunction, ADS holders will be *cashed out* of their holdings at the merger price of approximately $9.00 per share without ever being informed that they can dissent and, if the Company does not make a new offer that is acceptable to a shareholder, that shareholder will have the right to seek judicial determination of the *fair value of the shares*."  Pl. Memo. at 5-6 (emphasis added).

In other words, Boylan argues that there is a risk that ADS holders will receive one value instead of a potentially greater value.  This is *precisely* the type of monetary damage that is insufficient to demonstrate a showing of irreparable harm.  *See Alpha Capital Anstalt v. Shiftpixy, Inc.*, 432 F. Supp. 3d 326, 339-340 (S.D.N.Y. 2020) ("The majority of courts . . . have rejected the notion that monetary damages are not an adequate remedy at law for common stock available on the open market.  As one of those courts explained in denying the plaintiff's request for a permanent injunction: 'Under circumstances like these, courts in this District are generally loath to award injunctive relief.'"); *NewLead Holdings Ltd. v. Ironridge Glob. IV Ltd.*, 14-cv-3945 (WHP), 2014 WL 2619588, at **7-8 (S.D.N.Y. June 11, 2014) (finding no irreparable harm where damage alleged was drop in stock price); *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 581 (S.D.N.Y. 2002) (diminution in stock value insufficient to find irreparable harm); *EMA Fin., LLC v. Vystar Corp.*, 19-cv-01545 (ALC), 2020 WL 1233608, at *4 (S.D.N.Y. Mar. 13, 2020) (denying preliminary injunction where value of shares near date of breach was determinable).

Plaintiff cannot avoid the weight of authority holding that the availability of money damages precludes a finding of irreparable harm.  Indeed, he makes no effort to explain why monetary damages would not adequately compensate him.  Instead, he relies on one Delaware

Chancery Court decision for the unremarkable proposition that shareholders voting on a merger must be fully informed regarding such merger. Pl. Memo. at 6-7. That holding has no bearing here. Under Cayman Islands law holders of Sogou Ordinary Shares (including holders of Ordinary Shares represented by ADSs) will not be voting on the Proposed Merger (if it proceeds). *See* Compl., ¶ 26. Rather, they will be compensated based upon the number of Class A Ordinary Shares represented by the ADSs they hold. That is strictly a monetary calculation.

Having failed to show "the single most important prerequisite for the issuance of a preliminary injunction," *Faiveley Transp., supra* at 118, the PI Motion must be denied.

**B.** **Plaintiff Has Not Shown a Likelihood of Success on the Merits or a Serious Question Going to the Merits with a Balance of Hardships "Tipping Decidedly" in his Favor**

The second requisite for preliminary injunctive relief is "either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor." *Metro. Taxicab Bd. of Trade, supra* at 156. Boylan fails to show either of these.

**1.** **Plaintiff Has not Shown a Likelihood of Success on the Merits**

Boylan is unlikely to succeed on the merits because, as discussed in Point I, *supra*, there is no justiciable controversy here and he lacks standing. He is also unlikely to succeed on the merits because he cannot show a violation of Section 13(e) of the Exchange Act or any rules promulgated thereunder, and even if he could, there is no private right of action under the statute.

Boylan is wrong in his basic premise that Sogou "has violated Section 13(e) and Rule 13-3" (Compl., ¶ 37). He does not allege, nor can he, that the Schedule 13E-3/A-1, filed eight weeks before the Changyou Decision, was "false and misleading" (Compl., ¶ 39) *when filed*. Further, Sogou is not currently "engaging in a Rule 13e-3 transaction." *See* 17 C.F.R. § 240.13e-3(d) (only issuers engaged in a Rule 13e-3 transaction must comply with the regulation, not

17

issuers *hopeful* of entering into a transaction).  Sogou has put proof before this Court that it fully intends to amend the Schedule 13E-3/A-1 and provide ADS holders with disclosure of all material information required under the law if the Proposed Merger proceeds (see *supra* at 7). Thus, at this stage the Court cannot conclude that Boylan is likely to succeed on the merits to have this court declare the Schedule 13E-3/A-1 (or any subsequently amended Schedule 13E-3) false and misleading.

### 2.    Plaintiff's Claims Cannot Succeed Because Section 13(e) Does not Provide a Private Right of Action for Injunctive or any Other Relief

The weight of authority is that there is no implied private right of action under Section 13(e), and no case has found an implied private right of action for injunctive relief.  *See, e.g., Fasano v. Juoqing Li*, 16 cv-8759 (KPF), 2017 WL 6764692, at *13 (S.D.N.Y. Dec. 29, 2017) (finding that it is "unclear whether Plaintiffs' Section 13(e) claim would survive a motion to dismiss[]" because "[m]any courts […] have refused to recognize an implied right of action under Section 13(e)"), *reversed on other grounds, Fasano v. Yu Yu*, 921 F.3d 333 (2d Cir. 2019); *Berg v. First Am. Bankshares, Inc.*, Civ. A. No. 83-3887, 1985 WL 2232, at *8 (D.D.C. Apr. 17, 1985) (no private right of action for damages); *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1393-45 (D. Del. 1984), *aff'd*, 769 F.2d 152 (3rd Cir. 1985) (same); *Bolton v. Gramlich*, 540 F. Supp. 822, 855 (S.D.N.Y. 1982) (same); *accord Sanders v. Thrall Car Manuf. Co.*, 582 F. Supp. 945, 960 (S.D.N.Y. 1983) ("courts have consistently refused to imply private rights of action for damages under § 13(d) and similar reporting provisions in the 1934 Act"), *aff'd*, 730 F.2d 910 (2d Cir. 1984).

If there is no private right of action for damages under Section 13, *a fortiori* there is no private right to seek injunctive relief enjoining a merger.  The Schedule 13E-3/A-1 is on file with

the SEC.  No "private attorney general" is needed to intervene, especially where Sogou has made

clear its intention to amend the 13E-3/A-1 in the event that the Proposed Merger goes forward.

Plaintiff ignores the foregoing body of case law, instead relying on *Howing Co. v.

Nationwide Corp.*, 826 F.2d 1470, 1474-76 (6th Cir. 1987), *cert. denied*, 486 U.S. 1059 (1988),

and *Shamrock Assocs. v. Horizon Corp.*, 632 F. Supp. 566, 573 (S.D.N.Y. 1986), for the

proposition that a private right of action exists.  Such reliance is misplaced.

*Howing* is based on the outdated four-factor test set forth in *Cort v. Ash*, 422 U.S. 66

(1975), which is now strongly disfavored.  Supreme Court decisions following *Cort* hold that if

the language of a statute and its legislative history are silent with respect to private remedies, the

inquiry ends and no private right of action will be implied.  *See Touche Ross & Co. v. Redington*,

442 U.S. 560 (1979); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979); *see

also Thompson v. Thompson*, 484 U.S. 174, 189 (1988) (Scalia, J., concurring) (arguing that

*Touche* and *Transamerica* have effectively overruled *Cort*).  In addition, the court in *Shamrock*

did not hold that a private right of action under Section 13(e) existed – rather it declined to

dismiss the complaint on other grounds.  Accordingly, in addition to having no chance of success

on his claim for injunctive relief, Boylan is unlikely to succeed on his claim for declaratory

relief.

### 3. Plaintiff Has not Shown a Serious Question Going to the Merits with a Balance of Hardships "Tipping Decidedly" in Plaintiff's Favor

For the reasons set forth above as to Boylan's inability to show likelihood of success on

the merits, Sogou also submits he cannot show a serious question going to the merits and he

cannot demonstrate "a balance of hardships tipping decidedly in the plaintiff's favor."  *Metro.

Taxicab Bd. of Trade, supra* at 156.

###### i.   Plaintiff Is Suffering no Hardship and Will Suffer no Hardship if an Injunction Is Denied

Where a movant has not established the likelihood of success on the merits, the court "may grant the requested relief only if the [movant] can 'show that the harm which he would suffer from the denial of his motion is *decidedly* greater than the harm which the [non-movant] would suffer if the motion was granted.'" *Gennaro v. Rosenfield*, 600 F. Supp. 485, 492 (S.D.N.Y. 1984) (emphasis added) (citing *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir. 1981)).  "Because the movant must show that 'the balance of the hardships tips *decidedly*' in its favor, its overall burden under the 'serious questions' standard 'is no lighter than the one it bears under the likelihood of success standard.'" *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 273 (S.D.N.Y. 2019) (emphasis in original) (citing *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).

That burden requires a situation-specific analysis, where the movant must prove that the harm of denied injunctive relief greatly outweighs that which the non-movant would suffer from granted injunctive relief.  *See, e.g.*, *Christa McAuliffe, supra* at 275-76 (balance of hardships did not tip decidedly in plaintiff's favor, even where plaintiff "arguably suffer[ed] the most hardship" because enjoining the D.O.E. from implementing its new admissions process would cause undue burden); *N.Y.S. Ass'n of Career Sch. v. State Ed. Dept. of N.Y.*, 749 F. Supp. 1264, 1275 (S.D.N.Y. 1990) (after weighing specific hardships to plaintiff and defendant, the court held that the balance of hardships did not tip decidedly in favor of plaintiff); *Gennaro, supra* at 492 (holding that movant failed to show that the balance of hardships tipped decidedly in his favor where "the denial of injunctive relief [would] do little to mitigate the total harm [he would] suffer" and the non-movants would "suffer at least as much if not more harm from a grant of injunctive relief than the [movants would] suffer from a denial.").

As discussed above, Boylan has suffered no hardship here.  *See supra* at I.B.  If Plaintiff's PI Motion is denied, he can wait to see if the Proposed Merger goes forward and review the further amended Schedule 13E-3 that Sogou files with the SEC.  His rights are reserved.

### ii.   In Contrast, Granting an Injunction Will Cause the Needless Expenditure of Resources and Will Likely Cause Investor Confusion

If the Court grants Boylan's request to "[e]njoin[] the Merger until such time as Sogou has corrected the statements in the Transaction Statement concerning ADS holders' dissenters' rights and disseminate[s] a notice of merger in accordance with Section 238 of the Cayman Islands Companies Law" (Compl. at 13, Prayer for Relief B), Sogou will be prematurely forced to amend its SEC filing, without knowing if the Proposed Merger will even proceed, and without the opportunity for such amendment to include later material events (including the potential reversal of the Changyou Decision) in a single amended filing.  This is a waste of resources for both Sogou and the SEC.  It is more likely to cause investor confusion than anything else.

Indeed, as the Changyou Decision is on appeal, and thus by definition subject to reversal, granting the proposed injunction could cause Sogou to be put in the impossible position of (i) disclosing that dissenters' rights (under the trial court's decision) are available in a short-form merger under Cayman Islands law, (ii) having investors rely (or claim to rely) on that disclosure in making decisions to buy, sell or hold Sogou ADSs now, and (iii) then, in the event of reversal of the Changyou Decision, having Sogou ADS holders possibly rely on a premature and ultimately incorrect disclosure.

Enjoining the merger would needlessly burden Sogou and other Filing Persons in connection with unnecessary SEC filings, which the SEC Staff would then need to review.  This

harm is above and beyond any purported harm that Boylan could suffer if the Court denies the injunction.  Accordingly, the balance of hardships does not tip decidedly in Boylan's favor.

## C.   <u>Plaintiff Appears Unwilling or Unable to Post a Bond as Required by Rule 65(c)</u>

Fed. R. Civ. P. 65(c) provides, in relevant part:

(c) SECURITY. The court may issue a preliminary injunction or a temporary restraining order ***only if*** the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.  [Emphasis added.]

Boylan submitted to the Court a proposed Order (ECF No. 4-1) pursuant to which, without explanation, he is excused from the requirement in Rule 65(c) that he post a bond. Because compliance with the requested injunction would cause costs to Sogou and the other Filing Persons as well as the SEC, this *sub silentio* attempt to end run the Rule 65(c) bond requirement is of particular relevance to the balance of hardships here.  The general rule is that Rule 65(c) "allows a preliminary injunction to become effective only upon the applicant's positing of an amount that the district court determines adequate."  *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004) (vacating preliminary injunction because, *inter alia*, "the district court did not adhere to the requirements of Rule 65(c)" by not requiring a bond without adequate findings as to why a bond should not be required).

Boylan's apparent unwillingness or inability to post a bond as required by Rule 65(c) further confirms that the balance of hardships tips in Sogou's favor.

## D.   <u>The Public Interest Weighs in Favor of Denying an Injunction</u>

For reasons similar to those discussed in Point II.B.3.ii above, the public interest is best served by permitting Sogou to make a full and current disclosure at the appropriate time – assuming the Proposed Merger proceeds at all.  The public could not rely on a second amended Schedule 13E-3 addressing only the Changyou Decision because the Changyou Decision may be

reversed, and such an amendment could not address other material matters such as the outcome of the pending PRC anti-monopoly process.

An interim amendment is more likely to cause investor confusion as to the status of the Proposed Merger because ADS holders are not being asked to take any action at this time. Making a limited and likely incomplete amendment to the Schedule 13E-3/A-1, that will require further amendment, is counterproductive.

Additionally, granting the proposed injunction over a foreign corporate transaction between foreign corporations taking place abroad, based on Plaintiff's assertion that a single Cayman Islands trial court decision grants a new set of shareholder rights to a limited group of U.S. ADS holders, would not serve the public interest. *See, John Labatt Ltd. v. Onex Corp.*, 890 F. Supp. 235 (S.D.N.Y. 1995) (holding that comity and the public interest favored denying a request to preliminarily enjoin a tender offer where "Canadian interests predominate[d]" because, *inter alia*, the entities involved were Canadian, the transaction was entirely in Canada, and the target's shareholders were overwhelmingly Canadian). This is especially true in light of the SEC's already active role in overseeing the disclosures to ADS holders under Section 13(e) of the Exchange Act. *See Sheinberg v. Fluor Corp.*, 514 F. Supp. 133 (S.D.N.Y. 1981) (holding that harm to the public interest does not supply a basis for a preliminary injunction where the parties to a tender offer made a good-faith attempt to comply with the securities laws, and where the SEC was aware of the transaction and "keeping an administrative agency's eye on what [was] occurring [...]"). There is simply no reason for Plaintiff to intervene in the SEC's process.

Plaintiff argues that it is in the public interest to enforce the federal securities laws in connection with transactions conducted in the U.S. by Americans in American dollars on American stock exchanges, Pl. Memo. at 8; but the facts of this case undercut his argument. The

Proposed Merger will be conducted outside the U.S. by non-U.S. entities.  Plaintiff cites two decisions where the court purportedly analyzed "public interest" in the context of whether to dismiss for *forum non conveniens*.  *Id.* (citing *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21 (2d Cir. 2002) and *Kingdom 5-KR-41 Ltd. v. Star Cruises PLC*, 01-cv-2946 (AGS), 2002 WL 432390 at *7 (S.D.N.Y. Mar. 20, 2002).  Neither of those cases involved weighing the public interest of granting a preliminary injunction and the facts of each case are clearly distinguishable from those of here.  Plaintiff argues that the court in *DiRienzo* rejected the district court's finding that public interest factors weighed in favor of dismissal of securities fraud claims on grounds of *forum non conveniens* because the defendant Philip Services Corp. was Canadian.  Pl. Memo. at 8.  However, this oversimplification fails to address that defendant Philip Services Corp. in *DiRienzo* had a substantial U.S. presence, conducted business in twelve states, which generated seventy percent of its corporate revenue, and four out of fourteen directors on its board were American.  That is not the circumstance here.

In *Kingdom* the court did not address whether the public interest would be advanced by issuance of a preliminary injunction.  Rather, it held that Norway was not a more convenient forum than the Sothern District of New York for a dispute involving core claims based on New York law against a New York bank that was likely not subject to service in Norway.  Moreover, trying the case in Norway would not have improved judicial economy as key witnesses and documents were located either in New York or outside of both the U.S. and Norway.  *Kingdom*, *supra* at **6-7.

 "[T]he Court must 'ensure that the public interest would not be disserved by the issuance of a preliminary injunction.'"  *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *see also, Flores v. Islip*, 382 F. Supp.

3d 197, 245 (E.D.N.Y. 2019) ("Regardless of a plaintiff's ability to demonstrate irreparable harm and substantial likelihood of success on the merits, a district court may deny injunctive relief if it is against the public interest.").  The public interest is not served by enjoining the Proposed Merger because its relationship to the U.S. is limited, the SEC is overseeing the process, and a forced amendment at this time would confuse the public.  *See, Juicy Couture, Inc. v. Bella Intern. Ltd.*, 930 F. Supp. 2d 489, 505 (S.D.N.Y. 2013) ("The Second Circuit has long held that there is a 'strong interest in preventing public confusion.'" (citing *ProFitness Phys. Therapy Ctr. v. Pro-Fit Ortho. And Sports Phys. Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002)).

## CONCLUSION

For the foregoing reasons, Sogou respectfully requests that the Court enter an Order denying Plaintiff's PI Motion.[10]

Dated:  April 8, 2021

**GOULSTON & STORRS PC**

_____ */s/ Richard J. Rosensweig* _____
Nicholas Cutaia
Isabel P. Sukholitsky
Charles R. Jacob III
885 Third Avenue – 18th Floor
New York, New York 10022
(212) 878-6900
ncutaia@goulstonstorrs.com
cjacob@goulstonstorrs.com
isukholitsky@goulstonstorrs.com

-and-

Richard J. Rosensweig (*pro hac vice*)
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
(617) 482-1776
rrosensweig@goulstonstorrs.com

*Attorneys for Defendant Sogou, Inc.*

---

[10] On April 5, 2021, Sogou filed a pre-motion conference letter (ECF No. 19) requesting a conference with the Court regarding Sogou's intended motion to dismiss.