UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICK BOYLAN, | |
| Plaintiff, | **MEMORANDUM** |
| -against- | **OPINION & ORDER** |
| SOGOU INC., | 21 Civ. 2041 (PGG) |
| Defendant. | |

PAUL G. GARDEPHE, U.S.D.J.:

>          Plaintiff Patrick Boylan contends that Defendant Sogou Inc. has violated Section 13(e) of the Securities Exchange Act, 15 U.S.C. §78m(e) and Rule 13e-3, 17 C.F.R. § 240.13e-3 by disseminating in connection with a proposed merger transaction false and misleading statements regarding shareholders' entitlement to dissenters' rights.  (See Cmplt. (Dkt. No. 1)) The Complaint – filed on March 9, 2021 – seeks a declaration that Sogou has violated Section 13(e) by disseminating these alleged false and misleading statements as well as injunctive relief enjoining the proposed merger until Sogou disseminates a notice of merger that contains correct disclosures.  Pending before the Court is Plaintiff's motion for a preliminary injunction seeking to enjoin the merger.  (Dkt. No. 4)

## BACKGROUND

**I.      FACTS**

>          Defendant Sogou, Inc. is a Cayman Islands corporation with its principal place of business in Beijing, People's Republic of China.  Sogou's stock is traded on the New York Stock Exchange in the form of American Depositary Shares or "ADSs."  (Cmplt. (Dkt. No. 1) ¶¶ 1, 12, 14)

>          Defendant Sogou is a subsidiary of Sohu.com Limited ("Sohu"), a Chinese internet company that operates Sogou Search, the second largest search engine in China as measured by mobile queries.  (Id. ¶ 13)

In August 2017, Sohu sold a controlling interest in the company to Tencent Holdings Limited ("Tencent").  (Id. ¶¶ 16, 19)

On September 29, 2020, Sogou entered into an agreement and plan of merger that would effect a short-form merger in accordance with Section 233(7) of the Cayman Islands Companies Law.  The merger will be a going-private transaction.  TitanSupernova Limited will merge with Sogou, with Sogou emerging as the surviving company.  After the merger is complete, Sogou will be a privately held company, and all of its outstanding stock will be owned by THL A21 Limited, which in turn is a wholly owned subsidiary of Tencent.  (Id. ¶¶ 2, 20)  As a result of the merger, all non-affiliated holders of Sogou stock, including ADSs, will be cashed out of their positions.  (Id. ¶¶ 3, 21)  As compensation for the cash-out merger, each ADS holder will receive $9.00 per ADS, less $0.05 per share in fees. (Id. ¶¶ 1, 22)

Plaintiff Patrick Boylan is a holder of Sogou ADSs.  (Id. ¶ 11)

On December 1, 2020, in advance of the merger, Sogou filed a Transaction Statement with the Securities and Exchange Commission (the "SEC") pursuant to SEC Rule 13e-3.  This rule applies to going private transactions – such as the merger at issue here – that will result in the termination of registration of a class of equity securities of the issuer.  (Id. ¶ 4)

Rule 13e-3 requires that "information concerning appraisal rights" be disclosed in a Transaction Statement, including whether or not dissenting security holders are entitled to any appraisal rights.  (Id. ¶ 25)  In the Transaction Statement, Sogou states that – because the proposed transaction is a short-form merger pursuant to Section 233(7) of the Cayman Islands Companies Law – Sogou shareholders "will not be able to follow the statutory procedure to exercise dissenters' rights under Section 238 of the Cayman Islands Companies Law."  (Id. ¶¶ 4, 24-26)

According to Boylan, however, Section 238 of the Cayman Islands Companies Law – which is entitled "Rights of Dissenters" – affords "payment of the fair value of [a shareholder's] shares upon dissenting from a merger or consolidation."  Pursuant to Section 238, shareholders have 20 days following the merger to perfect their dissent by "provid[ing] written notice of their decision to dissent."  (Id. ¶¶ 5-6)  Boylan contends that Section 238 contains no exception for short-form mergers.  (Id. ¶ 5)

On January 28, 2021, after Sogou filed the Transaction Statement with the SEC, the Financial Services Division of the Grand Court of the Cayman Islands applied Section 238 to a short-form merger.  (Id. ¶¶ 5, 28; see In the matter of Changyou.com Limited, FSD 120 of 2020 (ASCJ)))  Accordingly, Boylan contends that Sogou's December 1, 2020 Transaction Statement "is false and misleading because it repeatedly misstates shareholders' entitlement to dissenters' rights."  (Cmplt. (Dkt. No. 1) ¶ 32)

On April 15, 2021, the Grand Court of the Cayman Islands, Financial Services Division, issued another order in Matter of Changyou.com, Ltd. reiterating that dissenters' rights are available in short-form mergers, but staying the effect of its order pending appeal.  (Def. Supp. Auth. (Dkt. No. 29))  The Cayman Islands court's provides:

1.    For the reasons set out in the Judgment, the Preliminary Issue is answered as follows:

    a.    where a "short-form" merger between a parent company and a subsidiary company is effected pursuant to section 233(7) of the Companies Act (2020 Revisions), a member of the subsidiary company is entitled to payment of the fair value of their shares as appraised by the court pursuant to section 238 of the Companies Act (2020 Revision) upon dissenting from the merger; and

    b.    a member of a subsidiary company wishing to dissent from a "short form" merger effected pursuant to section 233(7) of the Companies Act (2020 Revision) must give a notice of dissent within 20 days of the copy of the plan of merger being given to the member.

2.      The Petitioners have taken appropriate steps to dissent from the Company's Merger and have the right to prosecute their Amended Petition dated 30 June 2020.

3.      The Petitioners' costs associated with the trial of the Preliminary issue shall be the Petitioners' costs in any event, such costs to be taxed on the standard basis, if not agreed.

4.      The Respondent be granted leave to appeal to the Court of Appeal in respect of the Judgment and this Order, without prejudice to the Respondent's position that leave is not required.

5.      For the avoidance of doubt, the terms of this Order, and any further steps in the Amended Petition in FSD 120 of 2020, shall be stayed pending determination of the Respondent's pending appeal against the Judgment and this Order to the Cayman Islands Court of Appeal (CICA 006/2021).

6.      Costs of the Respondent's Summons be reserved.

(Def. Supp. Auth., Ex. 1 (29-2) at 2-3)

On May 7, 2021, the Court conducted a hearing concerning Boylan's application for a preliminary injunction. Following the hearing, the parties submitted supplemental briefing. (Dkt. Nos. 35-39)

During the time that Boylan's application has been pending, China's anti-monopoly regulators approved the proposed merger, which is a contractual prerequisite for completion of the merger. (See July 14, 2021 Pltf. Ltr. (Dkt. No. 40); July 30, 2021 Def. Ltr. (Dkt. No. 41) at 1)

On July 30, 2021, Sogou filed an amended Schedule 13E-3 statement (the "Amended Transaction Statement") which includes three updates of relevance here: Sogou describes (1) the Changyou decision and appeal; (2) dissenters' rights; and (3) this lawsuit.[1] (July 30, 2021 Def. Ltr. (Dkt. No. 41))

---

[1] The Amended Transaction Statement also states that "[i]n late November 2020, Tencent made a filing with relevant PRC regulatory authorities requesting anti-monopoly clearance with respect to the Sohu Share Purchase and the Merger, and obtained such clearance in early July 2021." (Am. Transaction Stmt. (Dkt. No. 41-1) at 26)

The Amended Transaction Statement includes a section with the following heading:  "Uncertainty as to Ability to Follow the Statutory Procedure to Exercise Dissenters' Rights."  This section provides as follows:

> Section 238 of the Cayman Islands Companies Act provides that, in order for a registered holder of shares of a constituent company in a proposed merger to be entitled to dissent and seek a determination of the "fair value" of its shares, the registered holder must give the company a written objection to the proposed merger before a vote on the merger is taken.  Because the Merger will be a "short-form" merger pursuant to section 233(7) of the Cayman Islands Companies Act, no shareholder vote on the Merger will be held.  Accordingly, the Company is not obligated to give a notice of authorization of the Merger and the time period within which a notice of dissent would have to be given pursuant to the procedures specified by Section 238 cannot start.  Accordingly, a registered holder of Class A Ordinary Shares will not be able to follow the prescribed statutory procedure of giving a written objection to the Merger in advance and, as a result, it is the Filing Persons' view that such registered holder will not be entitled to subsequently give a written dissent and petition the Grand Court of the Cayman Islands to determine the "fair value" of such holder's Class A Ordinary Shares; and will instead only be able to look to the determination of the Special Committee and the Sogou Board, which was based in part on the financial analysis and fairness opinion of Duff & Phelps, that the Per Share Merger Consideration is fair to the Unaffiliated Security Holders.
>
> The Filing Persons are aware that on January 28, 2021, in a case entitled "In the Matter of Changyou.com Limited," a judge of the Grand Court of the Cayman Islands issued a decision to the contrary as to the ability of registered shareholders in a short-form merger to seek a determination of the "fair value" pursuant to Section 238 of the Cayman Islands Companies Act.  Notwithstanding that Section 238 does not provide any procedure for a registered holder of shares affected by a proposed short-form merger to deliver the advance written objection to the proposed merger that is a condition precedent prescribed by the Cayman Islands Companies Act for giving a written dissent and issuing a petition to seek a determination of the "fair value" by the Grand Court of the Cayman Islands under Section 238, the judge determined that such a registered holder should not be required to deliver such an objection, and should instead be entitled to petition the Grand Court of the Cayman Islands for a determination of the "fair value" by the court as long as the registered holder delivers to the company a notice of dissent from the proposed merger within 20 days after a copy of the plan of merger for the proposed merger is given to the holder.  The Filing Persons are of the view that this first instance judgment does not follow the requirements of the Cayman Islands Companies Act and have been advised that the judge has stayed his decision pending the determination of an appeal of his judgment by the Court of Appeal of the Cayman Islands.  As stated elsewhere in this Transaction Statement, the Special Committee and the Sogou Board believe that the Per Share Merger Consideration is fair to the Unaffiliated Security Holders, and the Tencent Group believes the Merger is both substantively and procedurally fair to the Company's Unaffiliated Security Holders.  A copy of section 238 of the Cayman Islands Companies Act is attached to this Transaction Statement as Exhibit (f) (2) for the information of the Unaffiliated Security Holders.  Notwithstanding the foregoing, it is possible that the

Court of Appeal of the Cayman Islands will uphold the judge's decision, although the parties in the case have a final right of appeal from the Court of Appeal of the Cayman Islands to the Judicial Committee of the Privy Council in London.  Accordingly, Unaffiliated Security Holders who believe that they should be entitled to seek a determination of the "fair value" of the Class A Ordinary Shares by the Grand Court under Section 238 of the Cayman Islands Companies Act, whether as contemplated by the stayed decision or otherwise, are urged to seek advice from their own licensed Cayman Islands law firm.

(Am. Transaction Stmt. (Dkt. No. 41-1) at 64; see also id. at 22-23, 77)  Elsewhere in the Amended Transaction Statement, Sogou answers the question "Will shareholders be able to assert dissenters' rights (also referred to as 'appraisal rights') in connection with the Merger," with the same account set forth above.  (Id. at 29-30)

Under the heading "Litigation Related to the Merger," the Amended Transaction Statement addresses the instant lawsuit as follows:

. . . on March 9, 2021, a single plaintiff brought a lawsuit against the Company in the United States District Court for the Southern District of New York, entitled "Patrick Boylan v. Sogou Inc.," seeking to enjoin the Merger and demanding attorneys' fees, alleging that disclosure regarding dissenters' rights under Cayman Island law in Amendment No. 1 to this Transaction Statement, which was filed with the SEC on December 1, 2020, was false and misleading in the light of a subsequent decision regarding dissenters' rights in the Cayman Islands, rendered on January 28, 2021, of a judge of the Grand Court of the Cayman Islands, in a case entitled "In the Matter of Changyou.com Limited."  The Company believes that the plaintiff's claims are without merit.  No decision has been rendered on the motion of the plaintiff in Patrick Boylan v. Sogou Inc. for such an injunction as of the date of this Transaction Statement.  For further information regarding the decision of the judge of the Grand Court of the Cayman Islands, which is currently stayed pending appeal, please see "Special Factors — Uncertainty as to Ability to Follow the Statutory Procedure to Exercise Dissenters' Rights" beginning on [the following page].

(Id. at 63)

Boylan contends that the Amended Transaction Statement "continue[s] to violate Rule 13e-3."  (Pltf. Supp. Br. (Dkt. No. 44) at 2)  Sogou maintains that it has fulfilled its disclosure obligations.  (Def. Supp. Opp. (Dkt. No. 45))

## II.    **DISCLOSURE REGIME**

Section 13(e) of the Exchange Act – a Williams Act provision enacted in 1968 – requires companies buying publicly listed securities from shareholders in a going-private transaction to comply with certain rules established by the SEC:

It shall be unlawful for an issuer which has a class of equity securities registered pursuant to section 78 of this title, or which is a closed-end investment company registered under the Investment Company Act of 1940, to purchase any equity security issued by it if such purchase is in contravention of such rules and regulations as the Commission, in the public interest or for the protection of investors, may adopt (A) to define acts and practices which are fraudulent, deceptive, or manipulative, and (B) to prescribe means reasonably designed to prevent such acts and practices.  Such rules and regulations may require such issuer to provide holders of equity securities of such class with such information relating to the reasons for such purchase, the source of funds, the number of shares to be purchased, the price to be paid for such securities, the method of purchase, and such additional information, as the Commission deems necessary or appropriate in the public interest or for the protection of investors, or which the Commission deems to be material to a determination whether such security should be sold.

15 U.S.C. § 78m(e)(1).

The SEC promulgated Rule 13e-3 and Schedule 13E-3 pursuant to Section 13(e) of the Exchange Act.  15 U.S.C. § 78m(e)(2) ("The Commission shall have power to make rules and regulations implementing this paragraph in the public interest and for the protection of investors."); 17 C.F.R. § 240.13e–3(e).  Rule 13e-3(e) is an anti-fraud provision that provides as follows:

It shall be a fraudulent, deceptive or manipulative act or practice, in connection with a Rule 13e-3 transaction, for an issuer which has a class of equity securities registered pursuant to section 12 of the Act or which is a closed-end investment company registered under the Investment Company Act of 1940, or an affiliate of such issuer, directly or indirectly

(i)      To employ any device, scheme or artifice to defraud any person;

(ii)     To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(iii)    To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

17 C.F.R. § 240.13e-3(b)(1).  "As a means reasonably designed to prevent fraudulent, deceptive or manipulative acts or practices in connection with any Rule 13e-3 transaction," Rule 13e-3 makes it "unlawful for an issuer which has a class of equity securities registered pursuant to section 12 of the Act, or an affiliate of such issuer, to engage, directly or indirectly, in a Rule 13e-3 transaction unless" it has complied with, inter alia, the disclosure requirements for a going-private transaction set out in Rule 13e-3(d), (e), and (f).  See 17 C.F.R. § 240.13e-3(b)(2), (e).

   An issuer engaging in a Rule 13e-3 transaction has two sets of filing obligations (in addition to the other disclosure obligations required under federal securities laws).  The issuer "must file with the Commission:  (1) [a] Schedule 13E-3 (§ 240.13e-100), including all exhibits; (2) [a]n amendment to Schedule 13E-3 reporting promptly any material changes in the information set forth in the schedule previously filed; and (3) [a] final amendment to Schedule 13E-3 reporting promptly the results of the Rule 13e-3 transaction."  17 C.F.R. § 240.13e-3(d). With respect to security holders, the issuer must disclose, among other things, "information concerning appraisal rights required by § 229.1016(f) of this chapter," i.e., "[a] detailed statement describing security holders' appraisal rights and the procedures for exercising those appraisal rights."  17 C.F.R. §§ 240.13e-3(e), 229.1016(f).  This information must be disseminated to security holders "no . . . later than 20 days prior to" the 13e-3 transaction or any vote on such transaction.  17 C.F.R. § 240.13e–3(f).  The issuer must also "[p]romptly disseminate disclosure of material changes to the information required by paragraph (d) of this section in a manner reasonably calculated to inform security holders."  Id.

   Accordingly, in the context of a 13e-3 transaction, Sogou must disclose to its ADS holders "[a] detailed statement describing security holders' appraisal rights and the procedures for exercising those appraisal rights referred to in response to Item 1004(d) of Regulation M-A."  Stated another way, in connection with the proposed merger, Sogou must

"[s]tate whether or not dissenting security holders are entitled to any appraisal rights" and, if so,

"summarize the appraisal rights."  17 C.F.R. §§ 229.1004(d), 229.1016(f).

## DISCUSSION

## I.    STANDING

As an initial matter, Sogou contends that Boylan lacks standing to assert his

claim.[2]  (Def. Opp. (Dkt. No. 22) at 19-22)

> [T]he "irreducible constitutional minimum" of standing consists of three elements.  Lujan
> [v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)].  The plaintiff must have (1) suffered an
> injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and
> (3) that is likely to be redressed by a favorable judicial decision.  Id., at 560-561; Friends
> of the Earth, Inc. [v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)].
> The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing
> these elements.  FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990).

Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).  The "elements

are conjunctive, so that a failure of any of the three elements deprives a plaintiff of standing to

---

[2]  Sogou also argues that this Court lacks subject matter jurisdiction, because the issue is not ripe
for adjudication.  (Def. Opp. (Dkt. No. 22) at 15-18)  Ripeness "is peculiarly a question of
timing."  Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580 (1985).  A claim is not
ripe if it depends upon "contingent future events that may not occur as anticipated, or indeed
may not occur at all."  Id. at 580-81 (quotation omitted).  "Determining whether a case is ripe
generally requires [courts] to 'evaluate both the fitness of the issues for judicial decision and the
hardship to the parties of withholding court consideration.'"  Murphy v. New Milford Zoning
Comm'n, 402 F.3d 342, 347 (2d Cir. 2005) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149
(1967)).  "This two-prong inquiry . . . tracks both the doctrine's Article III and prudential
underpinnings.  The 'fitness of the issues for judicial decision' prong . . . requires a weighing of
the sensitivity of the issues presented and whether there exists a need for further factual
development. . . . [T]he 'hardship to the parties' prong clearly injects prudential considerations
into the mix. . . ."  Id. (citations omitted).

Here, Sogou contends that the issues Boylan raises "may never occur, and will likely resolve
[themselves] without the need for judicial intervention," in part because Sogou will need to file
"at least one additional amended Schedule 13E-3 with the SEC" after the proposed merger
receives "anti-monopoly approval in the PRC."  (Def. Opp. Br. (Dkt. No. 22) at 15, 17)  Sogou
further argues that Boylan's motion is not ripe because Sogou intends to amend its Schedule
13E-3 filing.  (Id. at 16-17)  Because Sogou received anti-monopoly approval from PRC
authorities and amended its Schedule 13E-3 after it filed its opposition brief, its ripeness
argument is now moot.

maintain an action in federal court."  Dickerson v. Feldman, 426 F. Supp. 2d 130, 134 (S.D.N.Y. 2006).

"When a preliminary injunction is sought, a plaintiff's burden to demonstrate [each element of] standing will normally be no less than that required on a motion for summary judgment."  Cacchillo v. Insmed, Inc., 638 F.3d 401, 404 (2d Cir. 2011) (internal quotation marks and citations omitted).  "Accordingly, to establish standing for a preliminary injunction, a plaintiff cannot 'rest on . . . "mere allegations," [as would be appropriate at the pleading stage] but must "set forth" by affidavit or other evidence "specific facts," which for purposes of the summary judgment motion will be taken to be true.'"  Id. (quoting Lujan, 504 U.S. at 561).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560).  "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'"  Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 (2014) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 n.5 (2013)).

Noting that Boylan has brought an individual and not a class claim, Sogou asserts that Boylan has not alleged an injury in fact.  Boylan cannot assert that he has suffered harm from false and misleading statements in Sogou's Amended Transaction Statement, because – as someone who is aware of dissenters' rights and familiar with the Changyou decision – he is "not at any risk of misinformation regarding dissenter[s'] rights in the Cayman Islands."  And because Boylan has alleged an individual claim, he cannot assert a claim on behalf of other holders of Sogou ADSs, or seek relief because their rights have been violated.  (Def. Opp. (Dkt. No. 22) at

19-22)  Sogou further argues that Boylan has not pled facts adequate to demonstrate that he holds

Sogou ADSs.  (Id. at 20)[3]

Boylan responds that – although he is aware of dissenters' rights – his "personal

dissenters' rights are at stake" because, after the merger transaction is consummated and after

Boylan dissents from the merger, Sogou will be obligated to comply with Cayman Islands law

and to offer him fair value and to engage in an appraisal process.  (Pltf. Reply Br. (Dkt. No. 26)

at 9)

But Boylan must demonstrate that he has "suffered 'an invasion of a legally

protected interest' that is 'concrete and particularized' and 'actual or imminent.'"  Spokeo, 136

S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560).  Given that his claim is predicated on Sogou's

alleged failure to disseminate information of which Boylan concededly is aware – dissenters'

rights and the impact of the Changyou decision – he has not plausibly alleged that he has

suffered an injury in fact.

The cases Boylan cites (see Pltf. Reply Br. (Dkt. No. 26) at 9) are not to the

contrary.  Koppel v. 4987 Corp., 167 F.3d 125, 132-33 (2d Cir. 1999) is a derivative action and

thus has no application here, where Boylan is asserting a claim on behalf of himself.[4]  See

Koppel v. 4987 Corp., No. 96 CIV. 7570 (RLC), 1997 WL 760512, at *1 (S.D.N.Y. Dec. 9,

1997), aff'd in part, rev'd in part, 167 F.3d 125 (2d Cir. 1999) (describing the cases as

consolidated "derivative actions").

---

[3]  Sogou also argues that Boylan has not alleged an "imminent harm," because the merger is not
certain to close and awaits regulatory approval.  (Def. Opp. (Dkt. No. 22) at 20-21)  Given that
PRC authorities have approved the merger, this argument is moot.
[4]  Although Boylan alleges in the Complaint that he has brought this action "to ensure that
shareholders are afforded . . . vital information [regarding dissenters' rights] and apprised of their
right, if they so elect, to seek judicial determination of the fair value of Sogou [ADS]" (Cmplt.
(Dkt. No. 1) ¶ 7), these allegations do not change the fact that this case is brought as an
individual action.

In <u>Gulf & W. Indus., Inc. v. Great Atl. & Pac. Tea Co.</u>, 476 F.2d 687, 689 (2d Cir. 1973) – also cited by Boylan (Pltf. Reply Br. (Dkt. No. 26) at 9) – Gulf & Western sued A&P, alleging violations of the antitrust laws and Sections 10 (b), 14(d) and (e) of the Securities Exchange Act in the context of a takeover attempt.  The facts there bear no relation to the facts here.  And in <u>Shamrock Assocs. v. Horizon Corp.</u>, 632 F. Supp. 566, 573 (S.D.N.Y. 1986), the court did not analyze or discuss whether the plaintiff had standing to assert a Rule 13e-3 claim.

The Court concludes that Boylan has not shown that he "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent.'" Accordingly, he lacks standing to pursue this matter.  <u>Spokeo</u>, 136 S. Ct. at 1548.

## II.    PRELIMINARY INJUNCTION

Even if Boylan had standing to pursue this action, he would not be entitled to a preliminary injunction, because he has not satisfied the elements necessary to obtain such relief.

### A.    Legal Standard

A court may issue a preliminary injunction only where

the plaintiff has [first] demonstrated "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]'s favor." Second, the court may issue the injunction only if the plaintiff has demonstrated "that he is likely to suffer irreparable injury in the absence of an injunction." . . . Third, a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor.  Finally, the court must ensure that the "public interest would not be disserved" by the issuance of a preliminary injunction.

<u>Salinger v. Colting</u>, 607 F.3d 68, 79-80 (2d Cir. 2010) (internal citations omitted).

### B.    Irreparable Harm

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  <u>Freedom Holdings, Inc. v. Spitzer</u>, 408 F.3d 112, 114 (2d Cir. 2005) (internal quotation marks and citation omitted); <u>accord</u> <u>Faively Transp. Malmo AB v. Wabtec</u>

Corp., 559 F.3d 110, 118 (2d Cir. 2009).  "The relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction."  Salinger, 607 F.3d at 81 (footnote omitted).  "'To satisfy the irreparable harm requirement, Plaintiff[] must demonstrate that absent a preliminary injunction [he] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.'"  Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007) (quoting Freedom Holdings. Inc., 408 F.3d at 114 (internal quotations omitted)); accord Curry v. City of New York, No. 10-CV-5847 SLT LB, 2010 WL 5391472, at *3 (E.D.N.Y. Dec. 22, 2010) ("The law in this Circuit requires that irreparable harm be likely, not merely possible.").

"Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances."  Moore v. Consol. Edison Co. of N.Y., 409 F.3d 506, 510 (2d Cir. 2005).  And "Plaintiff cannot rely on a presumption of irreparable harm flowing from the violations that he alleges – he must make a separate showing of irreparable harm."  Silberstein v. Aetna, Inc., No. 13 CIV. 8759 AJN, 2014 WL 1388790, at *3 (S.D.N.Y. Apr. 9, 2014).  Finally, courts "must 'actually consider the injury the plaintiff will suffer if he . . . loses on the preliminary injunction but ultimately prevails on the merits.'"  Id. (quoting Salinger, 607 F.3d at 80).

In arguing that he will suffer irreparable harm in the absence of a preliminary injunction, Boylan contends that because dissenters must hold their ADSs continuously to perfect their rights, "any ADS holder who sells her shares on the open market based on the incorrect statement in the Transaction Statement that ADS holders lack dissenters' rights would be precluded from exercising the dissenters' rights to which they are entitled under Section 238."

(Pltf. Reply Br. (Dkt. No. 26) at 10)[5]  This potential injury does not apply to Boylan, of course,

because he is fully cognizant of dissenters' rights.

Boylan goes on to suggest that he faces imminent harm based on depressed

market prices for Sogou ADSs because of Sogou's failure to inform shareholders of their

appraisal rights:

> Sogou's failure to tell shareholders about the availability of appraisal rights has left them
> with the impression that they have no choice but to accept Tencent's $9 [per ADS]
> merger offer.  And that, in turn, is depressing the price of the ADSs.  If, instead, investors
> understood that they can buy Sogou shares at the current low prices and have an
> opportunity to receive a greater price through appraisal, current Sogou market prices will
> likely rise and . . . Boylan[] will have alternative opportunities to either sell at the higher
> prices or seek appraisal.

(May 7, 2021 Hrg. Tr. (Dkt. No. 46) at 6)  According to Boylan, as a result of Sogou's failure to

disclose appraisal rights, "the market for Sogou ADSs is distorted" such that Boylan has been

injured by the "depress[ed] market value of Sogou's shares."  (Id. at 7-8)

The purported injury cited by Boylan can be remedied by monetary relief,

however.  Moreover, the concern "that shareholders will be unable to make informed investment

decisions without disclosures of information" ahead of a merger cannot "fairly be characterized

as irreparable [harm] since [it is] either highly speculative or remediable at law." Sheinberg v.

Fluor Corp., 514 F. Supp. 133, 136 (S.D.N.Y. 1981)  "The absence of an injunction will not . . .

impair plaintiff's ability to seek monetary damages." Litwin v. OceanFreight, Inc., 865 F. Supp.

2d 385, 401 (S.D.N.Y. 2011) (denying preliminary injunction where plaintiff alleged deficient

proxy statement).  Indeed, courts "have rejected the notion that monetary damages are not an

adequate remedy at law for common stock available on the open market." Alpha Cap. Anstalt v.

---

[5]  In Boylan's opening brief, he makes a different argument:  that "[i]n the absence of a
preliminary injunction, ADS holders will be cashed out of their holdings at the merger price of
approximately $9.00 per share without ever being informed that they can dissent" and seek an
appraisal under Cayman Islands law.  (Pltf. Br. (Dkt. No. 5) at 6-7)

Shiftpixy, Inc., 432 F. Supp. 3d 326, 339 (S.D.N.Y. 2020) ("[U]nder circumstances like these, courts in this District are generally loath to award injunctive relief." (quotation omitted)).

Boylan argues that monetary damages cannot remedy all potential harm here, because if Sogou were to disclose ADS holders' appraisal rights, "TenCent may be incentivized to increase its merger offer to stave off dissenters."  According to Boylan, absent an injunction, "Sogou is irreparably altering the dynamics between the ADS holders and Tencent."  (Pltf. Supp. Br. (Dkt. No. 35) at 8-9)  This is pure speculation.  And at bottom, Boylan is arguing that ADS holders would not receive adequate consideration for their ADSs, an argument that is a quintessential claim for monetary relief.

Because Boylan has not pled facts demonstrating that he will suffer an irreparable injury in the absence of an injunction, his motion for a preliminary injunction will be denied.

## C.  Likelihood of Success on the Merits

Even if Boylan had shown irreparable injury, he has not shown a likelihood of success on the merits.  Boylan claims that Sogou has violated Section 13(e) of the Exchange Act and Rule 13e-3 by failing to "supplement[] the Transaction Statement to make clear that holders of Sogou's Ads have dissenters' rights under Section 238 of the Cayman Islands Companies Law."  (Cmplt. (Dkt. No. 1) ¶¶ 34-35)

Sogou counters that (1) there is no private right of action under Section 13(e); and (2) Sogou has fulfilled its disclosure obligations under the Exchange Act.  (Def. Opp. Br. (Dkt. No. 22) at 24-26; Def. Supp. Opp. (Dkt. No. 45) at 2-5)[6]

---

[6]  Sogou also suggests that Rule 13e-3 does not apply here because it is only "hopeful of entering into a transaction," not "engaged in a Rule 13e-3 transaction."  (Def. Opp. (Dkt. No. 22) at 24-25 (emphasis omitted))  Sogou's filing of a Schedule 13E-3 disclosure belies this argument which, in any event, is wholly conclusory and without support.

### 1.      Whether a Private Right of Action Exists Under Section 13(e)

Whether Boylan can assert a claim under Section 13(e) to police non-compliance with Rule 13e-3 is an "unsettled issue." "[T]here is a lack of consensus among the courts as to whether [Section] 13(e) authorizes private suits." Polar Int'l Brokerage Corp. v. Reeve, 108 F. Supp. 2d 225, 246 n.35 (S.D.N.Y. 2000) (declining to reach the issue after determining the statute did not apply). "Many courts – including a sister court in this District – have refused to recognize an implied right of action under Section 13(e) of the Exchange Act." Fasano v. Juoqing Li, No. 16 CIV. 8759 (KPF), 2017 WL 6764692, at *13 (S.D.N.Y. Dec. 29, 2017), vacated and remanded on other grounds sub nom. Fasano v. Yu Yu, 921 F.3d 333 (2d Cir. 2019) (citing Bolton v. Gramlich, 540 F. Supp. 822, 842-43 (S.D.N.Y. 1982) (holding that there is no private right of action under Section 13(e)); Berg v. First Am. Bankshares, Inc., 599 F. Supp. 500 (D.D.C. 1984) (same); Kalmanovitz v. G. Heileman Brewing Co., 595 F. Supp. 1385 (D. Del. 1984) (same)).

However, the only appellate court to rule on the issue has found an implied right of action under Section 13(e). See Howing Co. v. Nationwide Corp., 826 F.2d 1470, 1474 (6th Cir. 1987) ("Based upon our review of the statute, the legislative history, and the Supreme Court's decisions respecting private rights of action, we conclude that such a right of action does exist under § 13(e).").

In asserting that there is a private right of action under Section 13(e), Boylan cites Howing, 826 F.2d at 1474-76 and Shamrock, 632 F. Supp. at 573. (Pltf. Reply Br. (Dkt. No. 26) at 15) Shamrock is of little assistance here because the court there assumed – without analysis or discussion – that there is a private right of action under Section 13(e). See Shamrock, 632 F. Supp. at 572-73.

In <u>Howing</u>, the Sixth Circuit's analysis rests on <u>Cort v. Ash</u>, 422 U.S. 66, 78 (1975), which directs courts to consider the following factors in determining "whether a private remedy is implicit in a statute not expressly providing one":

> First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,' – that is, does the statute create a federal right in favor of the plaintiff?  Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?  Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?  And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

<u>Cort</u>, 422 U.S. at 78 (internal citations omitted).

In performing the <u>Cort</u> analysis, the Sixth Circuit first found that the Williams Act – which includes the amendment that added Section 13(e) – was meant "to protect investors from potential manipulation of tender offers and corporate repurchases of stock."  <u>Howing</u>, 826 F.2d at 1475 (citing <u>Piper v. Chris-Craft Indus.</u>, 430 U.S. 1, 26-35 (1977)).  Accordingly, under the first <u>Cort</u> factor, investors – such as the plaintiffs in that case – were the intended beneficiaries of the statutory protections.  <u>Id.</u>

As to the second <u>Cort</u> factor, the Sixth Circuit noted that Section 13(e) "was explicitly patterned after the regulations then governing proxy solicitations," including Section 14(a) of the Exchange Act.  <u>Id.</u>  At the time that Section 13(e) was enacted, "the Supreme Court had already recognized an implied private right of action under [Section] 14(a)" based on a "special emphasis on the power granted to the SEC 'to protect investors.'"  <u>Id.</u> (citing <u>J.I. Case v. Borak</u>, 377 U.S. 426, 432 (1964)).  According to the <u>Howing</u> court, "Congress indicated its desire to allow a private right of action under § 13(e) when it chose language that was identical to the crucial language supporting a private right of action under § 14(a)."  <u>Id.</u>

Finally, the <u>Howing</u> court found that a "private right of action would fill a void in enforcement," as no other enforcement mechanism is provided in the statute and – as was the

case with the parallel proxy rules – "private enforcement may be the only way to achieve the purposes of § 13(e) given limited resources under the SEC's command." Id. at 1476 (citation and emphasis omitted).  But the decision to give weight to these circumstances is inconsistent with Supreme Court law instructing that the Cort factors are not "entitled to equal weight," and declining to consider "whether an implied private remedy is necessary to 'effectuate the purpose of [a statute].'"  Touche Ross & Co. v. Redington, 442 U.S. 560, 575 (1979).  Indeed, the Supreme Court has instructed that "[t]he central inquiry [is] whether Congress intended to create, either expressly or by implication, a private cause of action."  Id.

Lower courts have acknowledged that "the Supreme Court has reduced the importance of the Cort factors other than legislative intent."  Olmsted v. Pruco Life Ins. Co. of New Jersey, 283 F.3d 429, 434 (2d Cir. 2002); Feins v. Am. Stock Exch., Inc., 81 F.3d 1215, 1220 (2d Cir. 1996) (Supreme Court decisions following Cort v. Ash "have plainly stated that [a court's] focus must be on the intent of Congress.").  Accordingly, "what must ultimately be determined is whether Congress intended to create the private remedy asserted."  Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15-16 (1979).  "[U]nless this . . . intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist."  Thompson v. Thompson, 484 U.S. 174, 179 (1988).  See also Touche Ross & Co., 442 U.S. at 571 ("[I]mplying a private right of action on the basis of congressional silence is a hazardous enterprise, at best.").

"Determining congressional intent to create a right of action is . . . a matter of statutory interpretation."  Olmsted, 283 F.3d at 432.  "And as with any case involving the interpretation of a statute, [the] analysis must begin with the language of the statute itself."  Touche Ross & Co, 442 U.S. at 568.

While legislative silence "is not inevitably inconsistent with an intent on [Congress's] part to make [a private] remedy available" – since intent "may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment," Transamerica, 444 U.S. at 18 – "[a] court . . . cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided." Olmsted, 283 F.3d at 432 (internal quotation marks and citations omitted). Indeed, where Congress does not "explicitly provide[] a private right of action," courts "begin with the presumption that Congress did not intend one." Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 116 (2d Cir. 2007). This presumption "places a heavy burden on the plaintiffs to demonstrate otherwise." Olmsted, 283 F.3d at 433.

Here, the statute at issue makes no mention of a private right of action. As discussed above, Section 13(e) was added to the Securities Exchange Act in 1968 as part of the Williams Act. "As described in detail by both the Supreme Court and the Second Circuit, 'the sole purpose of the Williams Act was the protection of investors who are confronted with a tender offer.'" E.ON AG v. Acciona, S.A., 468 F. Supp. 2d 537, 550-51 (S.D.N.Y. 2006) (quoting Piper, 430 U.S. at 35) (citing GAF Corp. v. Milstein, 453 F.2d 709, 717 & n. 16 (2d Cir. 1971) ("The committe[e] reports make it clear that the Act was designed for the benefit of investors and not to tip the balance of regulation either in favor of management or in favor of the person seeking corporate control.")). The legislative history of the Williams Act does not address whether the enacting Congress intended to allow private shareholders to enforce violations under the rules promulgated under Section 13(e), however. Given these circumstances, this Court finds that Congress did not intend to create a private remedy. Bellikoff, 481 F.3d at 116.

In arguing otherwise, Boylan relies on the Cort factors as analyzed in Howing, and asserts that the private right of action determination "turn[s] on whether Congress intendeds

an act to benefit a specific set of people," and that Section 13 "was clearly designed to safeguard investors by requiring market actors to make certain filings."  Because "Plaintiff and all other ADS[] holders will benefit from [the] disclosure [that Boylan seeks]," Plaintiff argues that this Court should find that there is a private right of action to pursue such relief.  (May 7, 2021 Hrg. Tr. (Dkt. No. 46) at 9)  Boylan also emphasizes that Section 13(e) includes language identical to that found in Section 14(a), as to which the Supreme Court has found a private right of action. The shared language cited by Boylan authorizes the SEC to promulgate rules "in the public interest or for the protection of investors."  (Pltf. Supp. Br. (Dkt. No. 35) at 3-4 (comparing 15 U.S.C.§ 78n(a) with 15 U.S.C. § 78m(e))).

The fact that Section 14(a) and Section 13(e) share this language is not a sufficient basis to extrapolate Congressional intent to allow investors to police violations of Section 13(e).  In reaching this conclusion, this Court acknowledges that Howing states that – in modeling statutory language on a statute that the Supreme Court has already determined provides an implied private right of action – "Congress could have justifiably presumed that its silence with regard to private actions would be interpreted to indicate authorization.  Silence, in the contemporary legal context of the Williams Act, did not constitute disapproval of an implied private action."  Howing, 826 F.2d at 1475.

The Supreme Court has found little relevance in "this sort of 'contemporary legal context [analysis],'" however, and has "never accorded dispositive weight to context shorn of text."  Alexander v. Sandoval, 532 U.S. 275, 288 (2001); accord Olmstead, 283 F.3d at 434. Moreover, the Supreme Court case that found an implied private right of action based on congressional authorization for the SEC to promulgate rules "in the public interest or for the protection of investors," J. I. Case Co. v. Borak, 377 U.S. 426, 433 (1964), is no longer good law.  "Not even when interpreting the same Securities Exchange Act of 1934 that was at issue in

<u>Borak</u> have we applied <u>Borak</u>'s method for discerning and defining causes of action."

<u>Alexander</u>, 532 U.S. at 287.  In sum, Boylan's invocation of <u>Borak</u> (Pltf. Supp. Br. (Dkt. No. 35) at 3) is not persuasive.

Boylan has not pointed to any other aspect of the Williams Act or its legislative history that evinces an affirmative intent on Congress's part to provide a private right of action under Section 13.  Given these circumstances, Boylan has not carried his "heavy burden" to demonstrate that Congress intended to make a private right of action available for violations of Section 13(e).

### 2.     <u>Whether Sogou Has Violated its Disclosure Obligations</u>

Even if Boylan did have a right to sue for injunctive relief under Section 13(e), he has not demonstrated that Sogou has violated Section 13(e) or Rule 13e-3.  Boylan argues that he "is likely to prevail because Rule 13e-3 requires accurate disclosure of mandatory categories of information enumerated by the SEC, including 'information concerning appraisal rights.'"  (Pltf. Br. (Dkt. No. 5) at 5)  According to Boylan, the amended disclosure does not satisfy the requirements of the Exchange Act, as it "denie[s] ADS holders the information expressly required by Rule 13e-3 and, by extension, denie[s] them the very information necessary for them to perfect their appraisal rights."  (Pltf. Supp. Br. (Dkt. No. 44) at 1)

Boylan contends that Sogou's Amended Transaction Statement does not accurately describe the <u>Changyou</u> decision affording appraisal rights in a short form merger. Boylan complains that Sogou improperly states that there is "uncertainty" surrounding that decision, because "'the judge [on the Grand Court of the Cayman Islands] stayed his decision pending the determination of an appeal of this judgment by the Court of Appeal of the Cayman Islands.'"  (<u>Id.</u> at 2-3 (quoting Am. Transaction Stmt. (Dkt. No. 41-1) at 64))  Boylan argues that the <u>Changyou</u> decision was not stayed in its entirety, and that "[t]he stay provision . . .

necessarily applies only to the other provisions of the order that provide prospective relief within the petition," which is "the award of costs."  (May 7, 2021 Hrg. Tr. (Dkt. No. 46) at 12; Pltf. Supp. Br. (Dkt. No. 44) at 4)  Boylan further argues that because one of the provisions of the Changyou order grants leave to appeal, construing the stay as applying to all provisions of the order would render the appeal impossible, creating an "absurd result."  (Pltf. Supp. Br. (Dkt. No. 44) at 4)

Boylan's reading is belied by the clear terms of the Changyou order.  There is no language in the order that limits the stay to prospective aspects of the order:  "For the avoidance of doubt, the terms of this Order, and any further steps in the Amended Petition in FSD 120 of 2020, shall be stayed pending determination of the Respondent's pending appeal against the Judgment and this Order to the Cayman Islands Court of Appeal (CICA 006/2021)."  (Def. Supp. Auth., Ex. 1 (Dkt. No. 29-2) at 4)  Moreover, the order explicitly provides for a stay "pending determination of the . . . pending appeal."  (Id.)  Accordingly, Sogou accurately disclosed that the Changyou order granting appraisal rights in short form mergers was stayed pending appeal, creating uncertainty as to the future effect of the lower court's decision.

Boylan next argues that even if Sogou's discussion of the stay of the Changyou decision is accurate, "Sogou fails to inform its ADS holders of the required content of the notice of dissent and the ensuing procedure of the dissent process."  (Pltf. Supp. Br. (Dkt. No. 44) at 4-6)  Boylan also complains that "Sogou fails to even refer to the substantive provisions of the [Cayman Islands short form merger] statute, let alone mention any part of the Changyou.com Court's reasoning" for conferring appraisal rights in the context of a short form merger.  (Id. at 6)

Pursuant to 17 C.F.R. § 240.13e-3, an issuer is required to disclose "information concerning appraisal rights required by § 229.1016(f)," including "whether or not dissenting security holders are entitled to any appraisal rights.  If so, [the issuer must] summarize the

appraisal rights.  If there are no appraisal rights available under state law for security holders

who object to the transaction, [the issuer must] briefly outline any other rights that may be

available to security holders under the law."  17 C.F.R. § 229.1004(d).

Here, Sogou disclosed that it does not believe that appraisal rights are available

under Cayman Islands law, notwithstanding the contrary holding of the <u>Changyou</u> court, whose

decision has been stayed pending appeal.  (Am. Transaction Stmt. (Dkt. No. 41-1) at 64)  Boylan

has not cited any case suggesting that the disclosure Sogou made is insufficient.

The Court concludes that Boylan has not shown a likelihood of success on the

merits.

## **<u>CONCLUSION</u>**

For the reasons stated above, Boylan's motion for a preliminary injunction is

denied.  The Clerk of Court is directed to terminate the motion.  (Dkt. No. 4)  Sogou has stated

that it intends to file a motion to dismiss.  (Dkt. No. 19)  The following schedule will apply to

Sogou's motion to dismiss:

Sogou's motion is due October 4, 2021;

Boylan's opposition is due October 25, 2021; and

Sogou's reply, if any, is due November 1, 2021.

Dated: New York, New York
         September 13, 2021

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge